**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHEN DISTRICT OF OHIO
WESTERN DIVISION**

Sheryl L. Little,                                               :          Case No. 3:07CV2269

    Plaintiff,                                             :

v.                                                                     :

Commissioner of Social Security,                   :          **MAGISTRATE'S REPORT AND
                                                                                  RECOMMENDATION**

    Defendant.                                          :

Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of Defendant's final determination denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act (Act), 42 U. S. C. §§ 416 (i) and 423 and for Supplemental Security Income (SSI) under Title XVI of the Act, 42 U. S. C. §§ 1381 *et seq*. Pending are the parties' briefs on the merits and Plaintiff's Reply (Docket Nos. 17, 20 and 21). Based upon the evidence that follows, it is recommended that the decision of the Commissioner be reversed and the case remanded to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for rehearing consistent with the recommendations in this Report and Recommendation and that the referral to the Magistrate be terminated.

**PROCEDURAL BACKGROUND**

On December 16, 2004, Plaintiff applied for DIB alleging that she had been disabled since June 1, 2003 (Tr. 100-102). Her request for benefits was denied initially and upon reconsideration on May

20, 2005, and June 19, 2006, respectively (Tr. 88-90, 83-85).

The request for reconsideration of her SSI application was denied on or about July 19, 2005 (Tr. 816-818).

On December 7, 2006, Plaintiff, represented by counsel, and Vocational Expert (VE) Charles McBee appeared at a hearing conducted by Administrative Law Judge (ALJ) Richard C. Ver Wiebe (Tr. 904). The ALJ rendered an unfavorable decision on February 1, 2007 (Tr. 21-30). The Appeals Council denied Plaintiff's request for review on April 12, 2007 (Tr. 12-14). Plaintiff filed a timely action seeking judicial review of the Commissioner's final decision on July 26, 2007.

## JURISDICTION

This Court exercises jurisdiction over the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). *McClanahan v. Commissioner of Social Security,* 474 F.3d 830, 832 -833 (6th Cir. 2006).

## FACTUAL BACKGROUND

In response to a question from her counsel, Plaintiff confirmed that she had hypertension, hypercholesterolemia, gastroesophageal reflux disease (GERD) irritable bowel syndrome, anxiety, low bone density, chronic low back pain, dizziness, fatigue, arthritis, bursitis, migraines and syncope (Tr. 907, 912). During the year preceding the hearing, she experienced declining health. She was unable to work or drive because the treatment for her medical conditions made her dizzy and drowsy. She no longer had good days (Tr. 908).

Plaintiff's migraines had been controlled with drug therapy; now, she was experiencing migraine headaches three to four times weekly (Tr. 912). Her medication relieved the symptoms for up to two hours. After two hours, the migraine headaches would "bounce back" (Tr. 913).

Plaintiff suffered from excruciating pain to the extent that she could not sit or stand in one place for more than fifteen minutes. She was treated for pain on an emergency basis during the weekend preceding the hearing.

The day prior to the hearing, Plaintiff spent considerable time in the bathroom due to nausea with vomiting. She was also in pain, weak and drained (Tr. 909). Plaintiff's inability caused her to become malnourished (Tr. 914). Plaintiff was unable to sleep even in the daytime. She obtained some relief from pain by elevating her feet and applying ice (Tr. 911-912).

Plaintiff had been advised that she possibly had chronic fatigue (syndrome). She was scheduled to undergo epidural injections during the week following the hearing (Tr. 910). Plaintiff was also scheduled to go through biofeedback and counseling to deal with pain issues (Tr. 915).

Plaintiff's work history included employment as an "order taker" for fund raising organizations from 1997 to 2000 (Tr. 916). She could no longer perform the duties associated with this job as she could not sit for more than fifteen minutes (Tr. 917).

The VE testified that as defined in the DICTIONARY OF OCCUPATIONAL TITLES (DOT), Plaintiff's past position as an "order taker" was a sedentary position. Her work as a cashier was unskilled light work but performed at the medium exertion level. Plaintiff was unable to perform her past relevant work (Tr. 920). However, if permitted to alternate between sitting and standing, Plaintiff could perform her past relevant work as an order taker (Tr. 920). There would be approximately 5,000 to 6,000 sedentary jobs in this category. The need to alternate between sitting and standing would only erode this employment base by 10% (Tr. 921).

At the sedentary level, Plaintiff could perform work as a surveillance system person, table worker and telephone quotation clerk. There were 750-1,000 surveillance jobs, 200 to 250 of the table worker

jobs and 200 to 250 telephone quotation clerk jobs that Plaintiff could perform (Tr. 921, 922).

## **MEDICAL EVIDENCE**

**1989**

The results of the electroencephalogram (EEG) administered on January 5 while Plaintiff was awake were normal (Tr. 224).

**1990**

In June Dr. James E. Sander prescribed a pain medication specifically designed to treat the symptoms of migraine headaches (Tr. 223). In August, he found that Plaintiff had no edema and fewer migraines while taking this medication (Tr. 222).

**2001**

The results of the brain magnetic resonance imaging (MRI) administered on May 7 were negative (Tr. 375). The results from the upper gastrointestinal series conducted on August 1 were negative (Tr. 707). The results of the cerebral angiography administered on August 29, 2001 were normal (Tr. 372-373, 691-692).

**2002**

Dr. Mark G. Loomus altered the dosage of Plaintiff's migraine medication on January 30 to reduce the frequency of headaches (Tr. 229). Plaintiff was treated for migraine exacerbation in September (Tr. 236). The results of her brain scan, however, were normal (Tr. 238, 362).

Plaintiff's gall bladder was removed after a gallstone was detected on December 3 (Tr. 235, 361).

**2003**

The specimen of cells taken from Plaintiff's cervix in February was negative for lesion or malignancy within or among the epithelial cells. The cell changes were attributed to inflammation of

the cervix (Tr. 278). The results of the echogram of Plaintiff's abdomen and ultrasound of the biliary tree were negative on April 22 (Tr. 235, 360).

Dr. Anyse Storey treated Plaintiff for right flank pain in October. In November her right flank pain had improved (Tr. 247). The results of computed tomography (CT) scan of the abdomen and pelvis administered on November 7 were unremarkable (Tr. 248).

**2004**

The results from the CT scan of Plaintiff's face/sinus taken on March 2 were normal (Tr. 343). On March 19, Dr. Jay R. Jindal treated Plaintiff for chronic sinus infection (Tr. 318-319). Plaintiff was administered a narcotic pain reliever intravenously on April 14 to treat diarrhea and abdominal pain (Tr. 340). The random colon biopsy performed on April 15 showed normal mucosa (Tr. 501). The colonoscopy was normal (Tr. 747).

In April, Plaintiff underwent corrective surgery to straighten the nasal septum. The post-operative course was normal (Tr. 314, 316).

Dr. David G. Mallory treated Plaintiff from May 2004 through April 20, 2005 for persistent sinusitis (Tr. 332-337). Throughout the course of treatment, he noted that Plainitff had other symptoms such as coughing, fatigue, fever and chills (Tr. 330, 332, 335, 337). The results of the CT scan of Plaintiff's chest and paranasal sinuses taken on November 6 and 8, respectively, were normal (Tr. 355, 356, 547).

**2005**

Dr. Vicki Ramsey-Williams prescribed drug therapy to treat Plaintiff's migraines on February 7 (Tr. 256). In April, Dr. Mallory evaluated Plaintiff for sinusitis and bronchitis (Tr. 332 ). No evidence of myocardial infarct or ischemia was observed on May 9, 2005 (Tr. 573).

On May 13, Dr. Lynne B. Torello opined that Plaintiff had no exertional, manipulative, visual, communicative or environmental limitations (Tr. 291-294). However, climbing, using a ladder, rope or scaffold and exposure to hazards were contraindicated (Tr. 292, 294). The results of the pulmonary function tests administered on May 16 were normal (Tr. 306).

On May 20, Dr. M. Razi Rafeeq prescribed medication to heal an erosive esophagus (Tr. 308). Later on June 1, Dr. Rafeeq advised that Plaintiff had non-allergic rhinitis, chronic rhino-sinusitis, status post corrective surgery of the nasal septum and GERD with respiratory symptoms (Tr. 302).

When assessing whether Plaintiff had irritable bowel syndrome, Dr. Peter J. Reilly noted some delayed gastric emptying for liquids and slightly delayed gastric emptying for solids (Tr. 351).

Dr. Ramsey-Williams renewed a previously prescribed medication to treat the migraines in July (Tr. 321, 610). Two views of Plaintiff's tibia/fibula were taken on July 26. The results showed no evidence of bone, articular or soft tissue abnormality (Tr. 350).

The X-rays of Plaintiff's chest administered on October 7 showed intact bone structures and normal cardiac and chest contours (Tr. 541).

The results from the CT scan from the abdomen and pelvis taken on August 24 showed no evidence of renal stones or secondary signs of obstruction (Tr. 349).

In April, June and August, Dr. Jay R. Jindal diagnosed and/or treated Plaintiff for difficulty swallowing, chronic inflammation of all sinuses on both sides, erosion to the esophagus and rhinitis (Tr. 624-626). The stomach biopsy taken on October 24 contained benign gastric mucosa (Tr. 416, 615-619). The results from the bone density test of Plaintiff's lumbar spine and femoral neck were consistent with low bone density (Tr. 394).

**2006**

The X-ray of Plaintiff's right hip showed no evidence of significant abnormality (Tr. 417). Dr. Fadhil A. Hussein diagnosed and treated Plaintiff for postural hypotension and probable postural tachycardia syndrome on March 10 and April 28 (Tr. 441, 559, 564). When a radioactive tracer was infused, Plaintiff had no chest pain (Tr. 449). On the other hand, the Holter monitor electrocardiogram report made on April 28 showed rare episodes of sinus bradycardia, intermittent episodes of sinus tachycardia, rare single premature ventricular complexes and rare premature atrial complexes (Tr. 561).

Dr. Nick C. Albert opined on May 17 that Plaintiff had no exertional limitations but she should never climb using a ladder/rope/scaffold, and she should avoid all hazards, heights, dangerous machinery and commercial driving due to dizziness (Tr. 467, 468 & 470).

Plaintiff's lumbar spine was essentially normal on June 6 (Tr. 527). Then she commenced pain management on June 14. After thirteen sessions, Plaintiff still experienced migraines and hip soreness (Tr. 632-651).

Dr. Cindy Matyi conducted a psychiatric review on June 14 and noted that Plaintiff suffered from an anxiety related disorder (Tr. 455). She further noted that Plaintiff had a history of multiple symptoms that caused her to take medicine frequently, see a physician often and alter her life patterns significantly (Tr. 456). However, Plaintiff only had mild functional limitations in her restrictions of activities of daily living, difficulties in maintaining social functioning and maintaining concentration, persistence and pace and a complete inability to function independently outside the area of her home (Tr. 460, 461)).

Plaintiff was treated for acute back pain on July 18 (Tr. 656).

The MRI administered on July 27 showed evidence of possible small vessel disease and an acute or focal imaging abnormality intracranially (Tr. 654).

In August, Dr. Pat Gustine noticed that there was a small protrusion at the left paracentral L5

disc (Tr. 514). Plaintiff's hips showed no evidence of calcification, injury or degenerative change (Tr. 519). Plaintiff's esophagus, stomach and duodenum were deemed normal on August 4 (Tr. 596). There was a normal appearance of Plaintiff's spine in September (Tr. 483). Also in September, Dr. Jindal found that Plaintiff continued to suffer from reflux disease and an eating disorder (Tr. 764).

Plaintiff had epidural injections on September 26 and October 12 (Tr. 860-861, 865-866). She continued to have back and joint pain but on October 25, she reported that her pain had improved 70% (Tr. 778). In November and December, Dr. Needem Mogbal administered steroid and joint injections, bilaterally (Tr. 848, 853).

Plaintiff was diagnosed with episodic migraines on November 14. Rather than add and/or modify the drug regimen, Dr. Gretchen Tietjen recommended cognitive behavioral therapy (Tr. 883).

2007

The physical therapist that examined Plaintiff on January 4th found that she had marked limitations in her ability to bend, reach and handle. In her opinion, Plaintiff could stand/walk up to four hours and sit up to three hours. Of course, Plaintiff would require a break after standing/walking for thirty minutes and a break after sitting for fifteen minutes (Tr. 821).

Also in January, Dr. Mogbal commenced pain management therapy to reduce the misuse, overuse and dependency on therapeutic doses of opioids or sedative hypnotics (Tr. 839). He wrote new prescriptions on January 19 and administered lumbar blocks on February 8 and 16 (Tr. 829, 833, 834).

**STANDARD OF DISABILITY**

The standard for disability under both the DIB and SSI programs is substantially similar. *See* 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920 (1999). To assist clarity, the remainder of this Report and Recommendation references only the DIB regulations, except where otherwise necessary.

To establish entitlement to disability benefits, a claimant must prove that she or he is incapable of performing substantial gainful activity due to a medically determinable physical or mental impairment that can be expected to result in death or to last for at least twelve months. *Murphy v. Secretary of Health and Human Services*, 801 F.2d 182, 183 (6th Cir. 1986) (*citing* 42 U. S. C. § 423(d)(1)(A)). The claimant must show that his/her impairment results from anatomical, physiological or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. §§ 404.1513, 404.1528, 416.913, 416.928 (Thomson/ West 2008).

To determine disability, the ALJ uses a five-step sequential evaluation process.  20 C.F.R. §§ 404.1520 (a) - (f) and 416.920 (a) - (f) (Thomson/West 2008).  The ALJ considers: (1) whether the claimant is working and whether that work constitutes substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which meets or equals the durational requirements listed in Appendix 1 of Subpart P, Regulations No. 4, (4) whether the claimant can perform past relevant work, and (5) if the claimant cannot perform his/her past relevant work, then his/her RFC, age, education and past work experience are considered to determine whether other jobs exist in significant numbers that accommodate him/her.  20 C.F.R. §§ 404.1520 (a) - (f) and 416.920 (a) - (f) (Thomson/West 2008).

A finding of disability requires an affirmative finding at step three or a negative finding at step five.  The claimant bears the burden of proof at steps one through four, after which the burden shifts to the Commissioner at step five.  The ALJ's analysis at step five typically involves an evaluation of the claimant's RFC to perform a particular category of work (i.e., sedentary, light, medium, heavy or very heavy work), in combination with an application of the Grid to determine whether an individual of the claimant's age, education and work experience could engage in substantial gainful activity.  *See* 20

C.F.R. Pt. 404, Subpart P, App. 2 (Thomson/West 2008).

## ALJ DETERMINATIONS

After consideration of the entire record, the ALJ made the following findings of fact after the hearing on remand:

1. Plaintiff met the insured status requirements of the Act through June 30, 2007.

2. Plaintiff had not engaged in substantial gainful activity since June 1, 2003, the alleged onset date of her disability. Plaintiff did not have an impairment or combination of impairments that met or medically equaled the listing of impairments in 20 C. F. R. Part. 404, Subpart P, Appendix 1 (20 C. F. R. § § 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

3. Plaintiff had the residual functional capacity to perform sedentary work that allowed for a sit/stand option. Specifically she could lift and carry up to ten pounds occasionally, sit for fifteen minutes at a time and could stand/walk for fifteen minutes at a time.

4. Plaintiff, a younger individual with at least a high school education and the ability to communicate in English, was unable to perform any past relevant work. However, considering her age, education, work experience and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.

5. Plaintiff was not under a "disability" as defined in the Act at any time from June 1, 2003 through February 1, 2007.

(Tr. 23-30).

## STANDARD OF REVIEW

The district court must affirm the Commissioner's conclusions unless the Commissioner failed to apply the correct legal standard or made findings of fact that are unsupported by substantial evidence. *McClanahan, supra*, 474 F.3d at 833 (*citing Branham v. Gardner,* 383 F.2d 614, 626-627 (6th Cir. 1967)). In fact the Commissioner's findings as to any fact shall be conclusive if supported by substantial evidence. *Id.* (*citing* 42 U.S.C. § 405(g )). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion." *Id.* (*citing Besaw v. Secretary of Health and Human Services,* 966 F.2d 1028, 1030 (6th Cir. 1992)). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Id.* (*citing Buxton v. Halter,* 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted)). Therefore the reviewing court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994) (*citing Brainard v. Secretary of Health and Human Services*, 889 F. 2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F. 2d 383, 387 (6th Cir. 1984)).

## **DISCUSSION**

Plaintiff assigns five errors to the ALJ's decision. First, the ALJ failed to provide a fair and full hearing by not fully developing the record. Second, the ALJ's finding that Plaintiff could perform a full-range of sedentary work is unsupported by substantial evidence. Third, the ALJ failed to resolve the conflicts between the VE and the DOT. Fourth, the ALJ failed to include in the hypothetical question posed to the VE, the combination of Plaintiff's impairments. Fifth, the ALJ breached his heightened duty to protect Plaintiff while she was unrepresented by not scheduling a consultative examination.

In response, Defendant argues that Plaintiff was not deprived of a full and fair hearing. The ALJ included all of Plaintiff's limitations that were not stable or improved in formulating his functional capacity finding. Further, he relied on the same limitations in postulating a hypothetical question to the VE. There was sufficient evidence in the record to assess Plaintiff's mental condition. There was no need to schedule a fourth evaluation. Finally, there was no conflict between the VE's testimony and the provisions in DOT.

1.

In her first argument, Plaintiff does not criticize the ALJ's findings specifically but she complains that the ALJ failed to develop the record from which those findings were derived. The administrative hearing conducted by ALJ VerWiebe was completed in fifteen minutes. The transcript of the proceeding totaled 16 ½ pages. Plaintiff contends that the abbreviated hearing resulted in an incomplete factual record and a deprivation of her right to due process.

Procedural due process under the Fifth Amendment requires a full and fair hearings for disability benefits. *Richardson v. Perales,* 91 S.Ct. 1420, 1427 (1971). The ALJ has the ultimate responsibility for ensuring that all plaintiffs have a full and fair hearing. *Id.*

Social Security proceedings are inquisitorial rather than adversarial. *Sims v. Apfel*, 120 S.Ct. 2080, 2085 (2000). It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits. *Id.* (*citing Richardson v. Perales,* 91 S.Ct. at 1425). Only under special circumstances, when a claimant is without counsel, does the ALJ have a special, heightened duty to develop the record. *Lashley v. Secretary of Health and Human Services*, 708 F. 2d 1048, 1051-1052 (6th Cir. 1983).

After a careful review of the transcript from the hearing, the length of the hearing or the transcript is not dispositive. Plaintiff was represented by counsel at the hearing. Counsel conducted most of the direct examination, directing his inquiry into Plaintiff's health, ability to work and drive, past relevant employment and her limitations at this job (Tr. 911-916). The ALJ asked some follow-up questions to clarify some of Plaintiff's responses. In addition, the record before the ALJ contained a detailed work history report, resume, Plaintiff's assessment of her physical limitations (Disability Report) and a daily work activity report (Tr. 145-154, 188-199, 125-136). The hearing developed a

transcript of seventeen pages.

The Magistrate is not persuaded by the review of Plaintiff's responses to her counsel's inquiry, the medical statements and other records presented to the ALJ, that the ALJ failed to meet the standard for developing a full and fair hearing.

II.

Plaintiff argues that the ALJ's finding that she must sit every fifteen minutes is not consistent with sedentary work. The Magistrate agrees.

The regulations define sedentary work as involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. TITLES II AND XVI: DETERMINING CAPABILITY TO DO OTHER WORK--THE MEDICAL-VOCATIONAL RULES OF APPENDIX 2, 1983 WL 31251, SSR 83-10 (1983-1991). Although sitting is involved, a certain amount of walking and standing is often necessary in carrying out job duties. *Id.*

Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *Id.* "Occasionally" means occurring from very little up to one-third of the time. *Id.* Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. *Id.* Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles. *Id.*

Here, the ALJ found that Plaintiff can sit for fifteen minutes at a time. After sitting for fifteen minutes she must stand/walk for fifteen minutes. Under the ALJ's scenario, Plaintiff would have to be seated for four hours per day and she would have to stand/walk four hours per day. Plaintiff's level of

exertion does not fall within the level of exertion required for sedentary work.

III.

Plaintiff argues that the ALJ erred at step five of the sequential analysis by relying on the VE"s testimony. Plaintiff contends that the VE's testimony contains a conflict with the *DICTIONARY OF OCCUPATIONAL TITLES (DOT)*. The jobs offered by the VE in response to the hypothetical question did not include a sit/stand option.

Social Security Ruling 00-4p requires an ALJ to obtain a reasonable clarification of conflicts between a VE's testimony and information in the *DOT*. 2000 WL 1898704 at * 1 (2000). The need for clarification arises when there is an apparent unresolved conflict. *Id.* at *2. Ruling 00-4p mandates the ALJ to "inquire, on the record, as to whether or not there is such consistency." Id.

During Plaintiff's administrative hearing, the ALJ did not inquire into the possible existence of a conflict during his questioning of the VE about conflict between the descriptions for sit/stand options and the VE's testimony. The VE testified that the jobs he identified at the sedentary level involved the need for "alternating sitting and standing." Such need is not included in the job descriptions identified by the VE that would accommodate Plaintiff's level of exertion. The strength levels for a surveillance-system monitor, a table worker and a quotation clerk require that the claimant sit most of the time but no accommodation is made for alternate sitting and standing. See *DICOT* 379.367-010, *DICOT* 739.687-182 and *DICOT* 237.367-046 (1991). Plaintiff's counsel did not ask the VE about this potential conflict or otherwise alert the ALJ to the potential conflict. The VE's no-conflict testimony was therefore uncontradicted and left the evidence before the ALJ without any further need under Ruling 00-4p to seek a clarification from the VE. This issue was first raised upon filing her brief in district court. Since the VE identified jobs that appear to be in conflict with Plaintiff's residual functional

capacity and reduced range of sedentary work, the Commissioner must obtain additional VE testimony to determine if the conflicts exists with Plaintiff's residual functional capacity, the VE testimony and the *DOT* and resolve such issues.

IV.

Plaintiff argues that the ALJ failed to include in the hypothetical question posed to the VE, the severe combination of all of Plaintiff's impairments and incorporate her overall state and her abilities including all diagnosis and ailments in the proper hypothetical posed to the VE. Specifically the ALJ failed to include in the hypothetical, the need for frequent restroom breaks and the pain and blurred vision resulting from migraine headaches, often taking up to one half day for recovery.

Substantial evidence may be produced through reliance on the testimony of a VE in response to a "hypothetical" question, but only if the question accurately portrays the claimant's individual physical and mental impairment. *Culbertson v. Barnhart* 214 F.Supp.2d 788, 798 (N.D.Ohio,2002) (*citing Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987)). The ALJ is not obliged to incorporate unsubstantiated complaints into his or her hypothetical questions posed to the VE. *Stanley v. Secretary of Health and Human Services*, 39 F. 3d 115, 118-119 (6th Cir. 1994) (*citing Hardaway v. Secretary of Health and Human Services*, 823 F. 2d 922, 927-928 (6th Cir. 1987)). The ALJ can present a hypothetical to the VE on the basis of his or her own assessment if he or she reasonably deems the claimant's testimony to be inaccurate. *Jones v. Commissioner of Social Security,* 336 F. 3d 469, 476 (6th Cir. 2003) (*see Townsend v. Secretary of Health and Human Services*, 762 F. 2d 40, 44 (6th Cir. 1985); *see also Blacha v. Secretary of Health and Human Services*, 927 F. 2d 228, 231 (6th Cir. 1990)). In this case, the first hypothetical question did address the effects of Plaintiff's migraine headache on a claimant's job possibilities (Tr. 919). The ALJ included in the first hypothetical

posed to the VE, Plaintiff's need for frequent bathroom breaks, her blurred vision and the one half day needed to recover. The VE's answer to this hypothetical question did constitute substantial evidence of Plaintiff's vocational opportunities.

The ALJ had an adequate basis to discount Plaintiff's testimony about her pain. Simply, there was a lack of substantial evidence that supported her complaints of pain. Accordingly, it was entirely proper for the ALJ to present the VE with a hypothetical question he constructed that did not reflect Plaintiff's complaints of pain.

V.

Plaintiff suggests that the ALJ had a heightened duty to reschedule a psychiatric evaluation after she missed three appointments for consultative examinations scheduled before she retained counsel. Plaintiff contends that ordering another examination was imperative since Dr. Tiejen associated Plaintiff's pain with anxiety, depression and stressful childhood events, Dr. Mallory noted stress anxiety and depression and Dr. Ramsey Williams suspected that Plaintiff had a somatoform disorder.

If a claimant is applying for benefits and does not have a good reason for failing or refusing to take part in a consultative examination or test which was arranged for the purpose of obtaining information needed to determine your disability or blindness, the claimant may be found not disabled. 20 C. F. R. § 404.1518 (a) (Thomson/West 2008). If the claimant has a reason why he or she cannot go for the scheduled appointment, the agency should be notified as soon as possible before the examination date. 20 C. F. R. § 404.1518 (Thomson/West 2008). The agency will consider the claimant's physical, mental, educational and linguistic limitations in determining if there is a good reason to reschedule. 20 C. F. R. § 404.1518 (Thomson/West 2008).

The Magistrate is not persuaded that even though Plaintiff did not have legal counsel when she

16

missed three scheduled examinations, the ALJ had a special duty to reschedule a consultative examination for her. Plaintiff's counsel suggests several reasons why she failed to keep any of the appointments. Plaintiff, however, is silent with respect to her reasons for failing to keep three appointments, effectively waiving her claim for disability based on a mental impairment. Without a definitive excuse, the ALJ was authorized to find that Plaintiff did not have a disability based on severe mental impairment. The Commissioner has no good reason to reschedule the consultative examination a fourth time.

## CONCLUSION

The Magistrate recommends that pursuant to sentence four of 42 U. S. C. § 405(g), the Court remand this case to the Commissioner to:

(1) determine if Plaintiff is disabled because she has the exertional capacity for less than a full range of sedentary work; and if she is not disabled,

(2) determine at step five of the sequential evaluation what jobs, if any, will accommodate Plaintiff's residual functional capacity to perform less than a full category of sedentary work and in combination with an application of the Grid to determine whether an individual of the claimant's age, education and work experience could engage in substantial gainful activity work (i.e., sedentary, light, medium, heavy or very, can perform less than a full range of sedentary work); and

(3) obtain VE testimony to determine if a conflict exists with Plaintiff's residual functional capacity, the VE testimony, the DOT and resolve any conflict that may exist.

The Magistrate further recommends that the referral to the Magistrate be terminated.

/s/Vernelis K. Armstrong
United States Magistrate Judge

Dated: 05/19/08

## NOTICE

Please take notice that as of this date the Magistrate's Report and Recommendation attached hereto has been filed.

Please be advised that, pursuant to Rule 72.3(b) of the Local Rules for this district, the parties have ten (10) days after being served in which to file objections to said Report and Recommendation. A party desiring to respond to an objection must do so within ten (10) days after the objection has been served.

Please be further advised that the Sixth Circuit Court of Appeals, in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) held that failure to file a timely objection to a Magistrate's Report and Recommendation foreclosed appeal to the Court of Appeals. In *Thomas v. Arn*, 106 S.Ct. 466 (1985), the Supreme Court upheld that authority of the Court of Appeals to condition the right of appeal on the filing of timely objections to a Report and Recommendation.